United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America,  )<br>Plaintiff  )<br>v.  )<br>Wayne Carswell,  )<br>Defendant.  ) | Case No. 16-20277-CR-Scola |

**Order Granting Defendant's Motion to Dismiss**

This Cause came before the Court upon Defendant Wayne Carswell's ("Carswell") Motion to Dismiss Indictment for Violation of Speedy Trial (ECF No. 17). Carswell's motion is based upon violations of the Sixth Amendment of the United States Constitution and Fed. R. Crim. Pro. 48(b). He claims that the lengthy post-indictment delay weigh heavily against the Government, thus giving rise to a presumption of prejudice to his defense of this case. On July 1, 2019, the Court held an evidentiary hearing. Having considered the Motion, all supporting and opposing submissions, the credible evidence and testimony, the parties', the record, and the relevant legal authorities, the Court **grants** the Motion (**ECF No. 17**) for the following reasons.

1. **Background**

Carswell, who is also known by the names "Wendell Carswell," "Renegade Foxxx" and "Cool Foxxx," is a hip-hop artist. The Government claims that Carswell perpetrated a fraudulent scheme to obtain outside funding for the completion, promotion and marketing of a music album, which he represented would yield substantial returns upon release, among other things. After obtaining funds for these purposes, the Government claims that Carswell diverted the investments to himself and spent that money on various personal expenses without disclosure to or approval by the investors. On April 25, 2011, allegedly in furtherance of this scheme, the Government claims that Carswell wire transferred $15,000 from a Florida bank to a New York bank, (the "Transfer").

Almost five years later, on Friday, April 22, 2016, a grand jury returned a sealed indictment against Carswell on one-count of wire fraud under 18 U.S.C. § 1343. (the "Indictment," ECF No. 1.) Two years and nine months after that, on January 29, 2019, the Government arrested Carswell in Oklahoma. Carswell made an initial appearance before this Court, on February 13, 2019, and filed the Motion a month later, on March 15, 2019. The Indictment was unsealed on February 13, 2019, the date of Carswell's initial appearance. (ECF No. 7.)

From the date of the Indictment to the date of the arrest, the Government submits that it took diligent steps to locate Carswell. Specifically, the Government agent assigned to this case registered Carswell's warrant in a national database ("NCIC") that would be visible to all state, local, and federal law enforcement officers and trigger a notification to the FBI in Miami if Carswell encountered law enforcement of any kind. (ECF No. 23 at p. 4.) That case agent also "conducted periodic reviews of open-source databases, including Lexis-Nexis, for any new addresses associated with" Carswell. (*Id.*) In early 2019, one of these reviews revealed two addresses associated with Carswell in Oklahoma, leading to his arrest. (*Id.*)

Carswell moved from south Florida to Oklahoma in 2017 and lived under his true name throughout that time. (ECF No. 17 at p. 5.) While in Florida, Carswell's Florida driver's license listed his true address of residence. (*Id.*) Upon moving to Oklahoma in 2017, Carswell both rented an apartment and worked under his own name. (*Id.*) He submits that he never knew about the Indictment prior to his arrest and never tried to evade law enforcement. (*Id.*)

Carswell moves to dismiss the indictment, claiming the Government violated his Sixth Amendment right to a speedy trial. (ECF No. 17.) Specifically, Carswell argues that the Government's now over three-year post-indictment delay in bringing him to trial is presumptively prejudicial and without justification, and that Carswell promptly asserted his right to a speedy trial approximately one month after his arrest. Carswell claims that these facts weigh heavily against the Government such that he need not demonstrate that the delay prejudiced his trial defense to prevail on the Motion.[1]

In response, the Government concedes that the post-indictment delay is presumptively prejudicial under prevailing Supreme Court and Eleventh Circuit precedent. (ECF No. 23.) The Government also concedes that Carswell asserted his speedy trial right in due course. But the Government submits that it diligently pursued Carswell post-indictment, such that the delay in bringing him to trial was at most negligent and, in no case, done for the purpose of gaining advantage at trial. Because of that, the Government argues that Carswell must demonstrate actual prejudice to prevail on the Motion, which it argues he cannot do.

In reply, Carswell contests that the Government diligently pursued Carswell. (ECF No. 28 at pp. 4-5 (characterizing the Government's attempts to locate Carswell as "barebones").) Carswell further submits in reply that his defense has been prejudiced by the post-indictment delay because "records are

---

1  Alternatively, Carswell seeks dismissal under Fed. R. Crim. P. 48(b).

no longer available and memories have undoubtedly faded in the seven to eight years since the events in question." (*Id.* at p. 8.)

The Court held an evidentiary hearing on the Motion on July 1, 2019. During the hearing, the following witnesses testified:

### A.     Brian Oman ("Oman")

Oman has been a Special Agent for the FBI since 2008. Oman became involved in the investigation of Carswell in 2013 and worked with Neptime Dieujuste from the Florida Office of Financial Regulation ("OFR"). The investigation started with OFR when several alleged victims complained about monies they had invested with the Defendant to further his music career.

An Indictment was returned on April 22, 2016. Prior to the return of the Indictment, Oman attempted to located Carswell. He reviewed his DAVID (Florida Driver's License) information which listed his address as of April 4, 2014, at 3031 W. Commercial Blvd in Lauderdale Lakes. Oman went to the address a few weeks prior to the Indictment. They spoke to the manager but not to any other residents. They did not conduct surveillance and only went there one time. According to the building manager, Carswell had lived there in the past but had not been there in several months. Oman did not ask if Carswell had left a forwarding address for his mail. The manager also indicated that Carswell worked at a limousine company. Dieujuste contacted several limo companies to attempt to locate Carswell. Oman and Dieujuste also spoke to several alleged victims but they had not had contact with him since mid-2015. Oman wanted to speak to Carswell before the Indictment to obtain whatever information Carswell had about the case.

After the return of the indictment, Oman also registered the warrant in NCIC so any law enforcement officer in the United States would immediately see that there was an active warrant.

Oman did not ask the United States Postal Service to use a mail cover to notify the FBI of any mail being sent to Carswell.

No other physical locations were searched by Oman and Oman did not speak with any neighbors of any addresses associated with Carswell. Oman did not speak to anyone at any recording studios Carswell frequented to see if anyone had been in contact with Carswell or knew where he was.

Diana Ratevosian told Oman she had spoken to Carswell in January 2015 and she gave Oman two different active phone numbers of Carswell. Oman did not make any efforts to obtain records or cell site data to locate Carswell through those phone numbers.

Accurant has a real time phone search for individuals but Oman does not recall if he used that function to search for Carswell. A real-time Accurant search

shows that from January 2013 through June 2019 one of the phones associated with Carswell had an address in Edmond, Oklahoma where Carswell was eventually arrested.

Oman spoke to Bruce Park on January 27, 2016. Park had opened a bank account on behalf of Carswell in 2010. Park was the sole signatory on the account. That account was used for the wire transfers related to this investigation. Park gave Oman a phone number he had for Carswell and indicated that he spoken to Carswell a week earlier. Park also indicated that Carswell was still living in South Florida. After the Indictment, Oman did not contact Park to determine if he had spoken to Carswell or if he knew where Carswell was located even though Park indicated he was in contact with Carswell on a regular basis. No efforts were made to obtain phone records of Carswell's phone and no efforts were made through cell phone tower records to locate Carswell's phone.

Oman did check social media accounts like Facebook, YouTube, Twitter and LinkedIn to find Carswell but any information that was posted was stale.

On December 5, 2016, Dieujuste sent an email to Oman telling Oman he had been calling local limo companies and asked Oman if he had "any luck with New Jersey?" Carswell had a criminal record in New Jersey, but the information was years old.

On December 19, 2016, Dieujuste sent an email to Oman giving what might be a good address for Carswell at 301 Hoboken Road in Carlstadt, NJ. But, Oman did not follow up on that lead. Dieujuste followed up with Oman about this address and Oman promised to investigate it but he never did. This case was not a high priority for Oman.

Oman did not request documents from the IRS which would have an address and perhaps the business which employs the person. The FBI cannot obtain information directly from the IRS, that is something that has to be done through a prosecutor. That is generally not done to locate a fugitive.

In April 2017, Carswell registered a vehicle in Edmonds, Oklahoma, but Oman never learned about that registration.

On June 17, 2017, Oman wrote an email to an Assistant United States Attorney (the "AUSA") telling her that the warrant needed to be validated annually and asking her if she was still willing to prosecute if Carswell was located. Typically, Oman would have checked publicly available sources such as Experian, but he received no new information relating to Carswell.

A year later, on May 11, 2018, a similar validation email was sent to the AUSA in the case. During this one-year period, Oman had a staff member check social media platforms but found no new information about Carswell.

On May 23, 2018, Oman prepared a file review of the case in which he detailed the efforts made to locate Carswell. One note read "[s]end lead to Newark division regarding possible whereabouts." Oman, however, did not send any request to Newark.

Another note indicates, "[r]ecent utility activity indicates Carswell may be located in Oklahoma." "Send leads to Newark and Oklahoma City to investigate addresses associated with Carswell." But, Oman did not send requests to investigate either location at that time.

On January 18, 2019, Oman sent an electronic communication to the FBI in Oklahoma City requesting assistance in locating and arresting Carswell.

Open source data indicated that Carswell may have relocated to Oklahoma in April 2017. Oman learned from Accurant that Carswell was associated with two addresses in Edmond, Oklahoma, one from April 2017 through February 2018 and another from May 2017 through January 2019. Carswell was arrested at the first address on N. Pennsylvania Avenue in Edmond, Oklahoma on January 28, 2019.

### B. Neptime Dieujuste ("Dieujuste")

Dieujuste has been investigating white collar crime with the Florida OFR since 2008. In 2013, he began investigating Carswell. Eventually, the FBI was brought into the investigation.

The matter was presented to a grand jury on April 22, 2016. Prior to an indictment, Dieujuste attempted to located Carswell. He ran his driver's license and found an address on 3031 Commercial Blvd. Dieujuste knew Carswell drove a Mercedes Benz. Dieujuste went to the location alone, looked for the car and Carswell, saw neither, and left.

Dieujuste went again to the same location on Commercial Blvd with Oman. They spoke to the manager and learned Carswell had lived there for a while and that he was a driver for a limousine company. The manager also said Carswell spent most of his time in his room reading his Bible.

After the Indictment, Dieujuste went back to the Commercial Boulevard address a third time but did not see Carswell or his car.

Over the course of several weeks, Dieujuste called a number of limousine companies in South Florida trying to locate Carswell but none of the companies had information about Carswell. Dieujuste also went to the County office to see if Carswell had a license to drive a limo but did not find any records of Carswell.

On April 26, 2016, four days after the Indictment was returned, Dieujuste sent an email to Oman asking him to check out Carswell's address in New Jersey.

On December 5, 2016, Dieujuste sent an email to Oman asking him what results were obtained from New Jersey. Oman responded that he had forgotten about Carswell but would reach out to New Jersey.

On December 19, 2016, Dieujuste sent Oman another email with an address of Smack Entertainment at 301 Hoboken Road in Carlstadt, New Jersey and told Oman this might be a good address for Carswell. A Google search conducted by Dieujuste showed some connection between Smack Entertainment and Carswell. Dieujuste also found information linking Carswell to Paramus, New Jersey. Dieujuste passed this information to Oman. Dieujuste does not have arrest authority so he would have to give Oman any information to make an arrest.

On December 18, 2017, Dieujuste found information linking Carswell to Edmond, Oklahoma and he passed that information to Oman.

Dieujuste continued to monitor social media platforms but did not learn anything about Carswell.

Dieujuste wrote to Oman on July 10, 2018 and asked him what was happening with Carswell.

## 2. Legal Analysis

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." Amend. VI. Charges against a defendant who has been denied his constitutional right to a speedy trial must be dismissed. *Strunk v. United States*, 412 U.S. 434, 440 (1973). The Court must evaluate four factors to determine whether a delay constitutes an infringement on a defendant's right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972). Further, if the first three factors all weigh heavily against the Government, then the Court will presume the fourth factor, prejudice to the defendant, without a showing of actual prejudice. *Ingram*, 446 F.3d at 1336.

### A. Length of the delay

A delay exceeding one year constitutes a "presumptively prejudicial" delay. *Doggett v. United States*, 505 U.S. 647, 652 (1992). Once the first factor triggers the speedy trial analysis, "it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the government." *Ingram*, 446 F.3d at 1339. Here, the Government concedes that the two-year-and-nine-month delay between the indictment and Carswell's arrest meets the threshold delay to merit analysis of the other three factors. (ECF

No. 23 at p. 3); *Doggett,* 505 U.S. at 652 n.1. Indeed, it must; this delay is nearly three-times the threshold for presuming prejudice to Carswell.

Under the facts of this case, the presumptively prejudicial post-indictment delay requires the Court to consider the five-year pre-indictment delay. As a result, the almost three-year post-indictment delay weighs more heavily here than it would in another case where "the post-indictment delay began shortly after the allegedly criminal acts occurred." *Ingram,* 446 F.3d at 1338-39. The length of delay weighs heavily against the Government.

### B. Reasons for the delay

"Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner the burden is on the prosecution to explain the cause of the pretrial delay." *Ingram,* 446 F.3d at 1337 (internal citations, quotations, and ellipsis omitted). The Government must pursue a criminal defendant with reasonable diligence. *Doggett,* 505 U.S. at 656 ("[I]f the Government had pursued [the defendant] with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail."); *see also United States v. Hayes,* 40 F.3d 362 (11th Cir. 1994) ("persistent and documented efforts" to prosecute a defendant suffice). Courts must also consider whether a defendant's actions contribute to the delay. *Id.* But ultimately, it is the Government that "bears the burden of establishing valid reasons for the delay." *United States v. Villareal,* 613 F.3d 1344, 1351 (11th Cir. 2010).

The Court first notes that there is no record evidence that Carswell knew of the Indictment prior to his arrest or took acts to evade law enforcement. The Government does not contend otherwise. So the Court does not find that Carswell contributed to the post-indictment delay experienced in this case.

And the Court further finds that the Government did not pursue Carswell with reasonable diligence. The testimony and documentary evidence presented at the evidentiary hearing established that, from before the Indictment, the Government possessed three telephone numbers tied to Carswell. But the Government never called these numbers or attempted to locate Carswell through them by, for example, reviewing phone company records or tracking the location of the phone through cell towers. This was a missed opportunity for the Government, as an Accurant search for the relevant time frame would have revealed that one of those number was associated with Carswell's address in Edmond, Oklahoma, where he was ultimately apprehended.

Moreover, since at least December 2017, Dieujuste possessed information linking Carswell to Edmond, Oklahoma. This information was passed along to Oman. But the Government did nothing for six months. Then, in May 2018, Oman conducted a case review and noted that "[r]ecent utility activity indicates

Carswell may be located in Oklahoma.... Send leads to Newark and Oklahoma City to investigate addresses associated with Carswell." But Oman did not act on those recommendations for over eight months. This was another missed opportunity for the Government because Carswell was openly living in Oklahoma during this time. Indeed, he held a bank account in his own name, registered a car in his own name and leased an apartment, again, in his own name. Timely sending a lead request to the FBI in Oklahoma would have revealed this information and brought Carswell to trial in short order. In fact, Carswell was apprehended within days of Oman finally moving forward on those leads in late January 2019—fourteen months after Dieujuste first caught wind of his Oklahoma connection and eight months after Oman formally recognized that moving forward with the Oklahoma lead was the proper course.

Far from "persistent," the efforts to bring Carswell to trial reflect, as Oman represented at the hearing, that this case "was not a priority" for the Government. That may be true, but it does not abridge Carswell's constitutional right to a speedy trial. The Government did not pursue Carswell with "reasonable diligence." *Doggett*, 505 U.S. at 656. On the facts of this case, including that Carswell did not contribute to the delay and that the Government failed to take any action to pursue the Oklahoma lead for over a year, the Court weighs this factor heavily against the Government.

### C. Defendant's assertion of his speedy trial right

"[A] defendant has some responsibility to assert a speedy trial claim." *Barker*, 407 U.S. at 529. Here, Carswell asserted his right to a speedy trial approximately one month after his arrest. (ECF No. 17.) The Indictment was sealed prior to February 13, 2019. There is no indication that Carswell knew of the Indictment before he was arrested in January 2019. The Government concedes that this factor weighs against it under the *Barker* analysis. (ECF No. 23 at pp. 6-7.) The Court finds that Carswell "did everything he should to assert his right to a speedy trial" and that this factor "weigh[s] heavily against the Government." *Ingram*, 446 F.3d at 1340.

### D. Prejudice to the defendant

Because the first three factors weigh heavily against the Government, prejudice to Carswell is presumed. *Ingram*, 446 F.3d at 1336. The Court therefore finds that the fourth factor weighs against the Government.

### 3. <u>Conclusion</u>

In sum, all four *Barker* factors weigh in favor of dismissal here. *Id.*; *Barker*, 407 U.S. at 530. Accordingly, the Court **grants** Carswell's Motion, (**ECF No. 19**), and **dismisses** the Indictment (**ECF No. 1**).

**Done and Ordered** in Miami-Dade County, on July 1, 2019.

_____
Robert N. Scola, Jr.
United States District Judge